15

**FILED**

MAR 22 2017

JUDGE ANDREA WOOD
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

CHRISTOPHER C. HICKSON

15 CR 529-1

Judge Andrea R. Wood

## PLEA DECLARATION

### Charges in this case.

1.     The indictment in this case charges Mr. Hickson with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, an anabolic steroid, in violation of Title 21, United States Code, Section 846 (Count One); importing a controlled substance, namely, an anabolic steroid, in violation of Title 21, United States Code, Section 952(b), 960(a)(1), and 963 (Count Two); transferring funds from Chicago, Il to China, for the purpose of promoting drug importation, in violation of Title 18, United States Code, Section 1956(a)(2)(A) (Count Three); and possession with intent to distribute a controlled substance, namely, an anabolic steroid, in violation of Title 21, United States Code, Section 841(a)(1) (Count Four). Mr. Hickson has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

2.     Mr. Hickson fully understands the nature and elements of the crimes with which he has been charged.

## Charges to which Mr. Hickson is pleading guilty.

3.     Mr. Hickson agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges him with conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, an anabolic steroid, a Schedule III Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and 846; and Count Three, transmitting and transferring funds from a place in the United States (Chicago) to a place outside the United States (China), for the purpose of promoting felonious drug importation, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## Factual Basis

4.     Mr. Hickson will plead guilty because he is in fact guilty of the charges contained in Counts One and Three of the indictment. In pleading guilty, Mr. Hickson admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

## Count One

5.     Beginning no later than April 2013, and continuing until on or about November 3, 2014, at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere, Mr. Hickson conspired with others known and unknown, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a quantity of a mixture and substance containing an anabolic

steroid, a Schedule III Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); in violation of Title 21, United States Code, Section 846.

6.     Specifically, between April 2013 and November 3, 2014, Mr. Hickson wired, or caused to be wired, at least $22,760 to steroid suppliers in China, and thereby purchased and imported kilogram quantities of bulk steroid powder that he subsequently manufactured into various anabolic steroids in his home, located in Aurora, Illinois. Mr. Hickson paid various individuals, including individual B and Individual C, to fill capsules with anabolic steroids and package them in bottles for distribution. Mr. Hickson then used social media and the internet to sell and distribute the steroids to approximately 100 customers.

7.     Mr. Hickson further acknowledges that, on or about November 8, 2014, he possessed in his home in Aurora, Illinois, approximately 10 kilograms of various mixtures and substances containing anabolic steroids that he had manufactured in his home after importing bulk steroid powder from China. Mr. Hickson admits that he intended to use himself and/or distribute the steroids to his customers.

### Count Three

8.     On or about April 17, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, Mr. Hickson knowingly and intentionally transmitted and transferred funds from the United States to China, with the intent to promote the felonious importation of a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

9.     Specifically, on or about April 17, 2014, Mr. Hickson transferred ~~CH~~.
approximately $3,926 in funds from a Western Union office located in ~~Chicago,~~ Aurora

Illinois, to an individual residing in China, in order to purchase bulk steroid powder

that Mr. Hickson previously ordered online. Mr. Hickson acknowledges that he wired

the payment to China so that he could import a quantity of a mixture and substance

containing an anabolic steroid, a Schedule III Controlled Substance, and that he

purchased that controlled substance in order to manufacture, sell, and distribute it

in the United States.

10.     Mr. Hickson further acknowledges that, between in or about April 2013

and on or about November 3, 2014, Mr. Hickson wired, or caused to be wired,

approximately $22,760 to suppliers in China, and thereby purchased and imported

kilogram quantities of bulk steroid powder that he subsequently manufactured into

steroids in his home in Aurora, Illinois.

### Maximum Statutory Penalties

11.     Mr. Hickson understands that the charges to which he is pleading

guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of 10 years'

imprisonment, a maximum fine of $500,000, and a term of supervised release of at

least two years up to life.

b.    Count Three carries a maximum sentence of 20 years' imprisonment, a maximum fine of $500,000, or twice the gross gain, whichever is greater, and a term of supervised release of not more than three years.

c.    In accord with Title 18, United States Code, Section 3013, Mr. Hickson will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

d.    Therefore, under the counts to which the defendant is pleading guilty, the total maximum sentence is 30 years' imprisonment, a fine of up to $1,000,000, or twice the gross gain, whichever is greater, a period of supervise release, and special assessments totaling $200.

### Sentencing Guidelines Calculations

12.    Mr. Hickson understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Mr. Hickson understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

a.    **Applicable Guidelines.** The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

b.   **Offense Level Calculations**.

**Count One:**

i.   The base offense level is 20, pursuant to Guideline §2D1.1(a)(5) and (c)(10), because the amount of mixtures and substances containing anabolic steroids involved in the offense is in excess of 10 kilograms, which is 60,000 or more units of Schedule III controlled substances.

ii.   The offense level is increased by 2 levels, pursuant to Guidelines §2D1.1(b)(7), because a controlled substance was distributed through mass-marketing by means of an interactive computer device.

iii.   Based on the foregoing, the total offense level for the offense charged in Count One is 22.

**Count Three:**

iv.   Because Mr. Hickson committed the underlying offense (conspiracy to possess with intent to distribute and distribute a controlled substance), and the offense level for that offense can be determined, the base offense level is the same, 22, pursuant to Guideline §2S1.1(a)(1).

v.   Pursuant to Guideline §2S1.1(b)(2)(B), the offense level is increased by 2 levels because defendant was convicted under 18 U.S.C. § 1956.

vi.   Based on the foregoing, the total offense level for the offense charged in Count 3 is 24.

### Grouping

vii.      Pursuant to Guideline §3D1.3, the offense level applicable to the group is the highest level related to the counts included in the group. Therefore, the offense level for the group is 24.

### Acceptance of Responsibility

viii.      Mr. Hickson has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct, therefore, pursuant to Guideline §3E1.1(a), a two-level reduction in the offense level is appropriate.

ix.      In accord with Guideline §3E1.1(b), Mr. Hickson has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that Mr. Hickson is entitled to a two-level reduction for acceptance of responsibility, it is anticipated that the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category**. With regard to determining Mr. Hickson's criminal history points and criminal history category, his criminal history points equal zero, and Mr. Hickson's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. The anticipated offense level is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release, special assessment, and fine, the Court may impose.

      e.    Mr. Hickson and his attorney acknowledge that the above guidelines calculations are non-binding predictions upon which he is not entitled to rely. Accordingly, the validity of this Agreement is not contingent upon the Court's concurrence with the above calculations, and Mr. Hickson shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

13.    It is understood that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Mr. Hickson further acknowledges that if the Court does not impose the requested sentence, Mr. Hickson will have no right to withdraw his guilty plea.

## Forfeiture

14.    Mr. Hickson understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property which constitutes and is derived from proceeds obtained, directly or indirectly, as a result of the offense; and any property used, and intended to be used, in any manner or part, to commit a facilitate commission of the offense.

8

15.     Mr. Hickson agrees to the entry of a personal money judgment in the amount of $100,000, which represents the total amount of funds involved in the offense. He consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

16.     Mr. Hickson admits that because the directly forfeitable property is no longer available for forfeiture, the United States is entitled to seek forfeiture of any other property, up to the value of the judgment.

### Waiver of Rights

17.     Mr. Hickson understands that by pleading guilty he surrenders certain rights, including the following:

      a.     **Trial rights**. Mr. Hickson has the right to persist in a plea of not guilty to the charge against his, and if he does, he would have the right to a public and speedy trial.

            i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, Mr. Hickson, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

            ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Mr. Hickson and his attorney would participate in choosing the jury by requesting that the Court remove

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.     If the trial is a jury trial, the jury would be instructed that Mr. Hickson is presumed innocent, that the government has the burden of proving Mr. Hickson guilty beyond a reasonable doubt, and that the jury could not convict his unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

      iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had establihed Mr. Hickson's guilt beyond a reasonable doubt.

      v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against Mr. Hickson. Mr. Hickson would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.     At a trial, Mr. Hickson could present witnesses and other evidence in his own behalf. If the witnesses for Mr. Hickson would not appear voluntarily, he could require their attendance through the subpoena power of the Court. Mr. Hickson is not required to present any evidence.

vii.     At a trial, Mr. Hickson would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If Mr. Hickson desired to do so, he could testify in his own behalf.

b.     **Appellate rights.** Mr. Hickson further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Mr. Hickson understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

## Conclusion

18.     Should this Court refuse to accept Mr. Hickson's plea of guilty, this plea declaration shall become null and void.

19.     Mr. Hickson and his attorney acknowledge that no threats, promises, or representations have been made to cause Mr. Hickson to plead guilty.

DATE: 3.22.2017

_____
Christopher C. Hickson
*Defendant*

_____
MARY H. JUDGE
*Attorney for Mr. Hickson*

12